In re ESTATE OF FRANK MASLOWSKI, a Disabled Person/Deceased (Dennis Rosa, Successor Guardian, Petitioner-Appellee, v. Jannina Jiminez, Respondent-Appellant).

First District (3rd Division)   No. 1—89—2657

Opinion filed September 26, 1990.

Ralph M. Bernstein & Associates, of Chicago (Sheryl E. Fuhr and Ralph M. Bernstein, of counsel), for appellant.

Linda S. Kagan, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

In this cause, Dennis Rosa, as successor guardian of the estate of Frank Maslowski (decedent), sought to recover proceeds from a life insurance policy on decedent.

In February 1981, decedent was adjudicated a disabled person. His sister, Sophie Rosa, was appointed plenary guardian. In April 1981, as guardian, and on behalf of his estate, she filed a petition for a citation to discover assets. (Ill. Rev. Stat. 1987, ch. 110½, par. 16—1.) Jannina Jiminez was named as respondent.

In May 1981, pursuant to the citation petition, respondent appeared for a discovery deposition. Attorney Raymond Rysztogi represented respondent and was present at the deposition. At the deposition it was revealed that respondent was the owner of a life insurance policy on which decedent was insured. No further action was taken in the citation proceeding.

In July 1982, decedent died and the proceeds from the life insurance policy were paid to respondent. On February 5, 1987, Sophie Rosa filed a new citation proceeding to discover and recover the insurance policy proceeds. (Ill. Rev. Stat. 1987, ch. 110½, par. 16—1.) Sophie Rosa died in 1988. Her son, Dennis Rosa, was subsequently appointed successor guardian of the estate.

The record reveals that in April 1982, Rysztogi sent two letters to James O'Connell, the attorney for decedent's estate. The letters are purported to be the memorialization of an agreement between respondent and Sophie Rosa whereby Sophie would pay the 1982 premium amount in exchange for the decedent's estate being named as the beneficiary of the insurance proceeds. There is no indication, on either letter, that a

carbon copy was sent to respondent.

The first letter, dated April 2, 1982, informed O'Connell that he (Rysztogi) was sending him decedent's Northern National Life Insurance Policy, advised him of the annual premium amount, and the date the premium was to be paid. Further, the letter stated that respondent had been paying the policy since 1978 and that "she fe[lt] that the sister should now assume some of her obligations which were heaped upon her. Kindly have the beneficiary changed, my client is ready and willing to cooperate at any time to affect [sic] the change."

The second letter, dated April 16, 1982, stated that the "PREMIUM DUE NOTICE" from Manhattan National Life Insurance Company was attached and reminded O'Connell that the grace period would run out on April 28, 1982.[1]

Respondent testified that she lived with decedent for about three or four years until his death. In 1978 decedent took out a life insurance policy on his life and designated respondent as the beneficiary. In May 1980, decedent changed the ownership of the insurance policy from himself to respondent. According to her, in 1978 and 1979, when decedent was short of money, she helped him with the payments of the life insurance premium. She paid the premiums in 1980 and in 1981.

According to respondent, when she received notice of the 1981 citation proceeding, she hired attorney Rysztogi to represent her. She met with him only three times, once before the deposition, once at the deposition, and a third time, maybe two weeks after the deposition. Respondent denied that she had had any further contact with Rysztogi. She stated that she did not pay Rysztogi for his services because he lost her documents.

Respondent also testified that she did not receive a premium notice for 1982. She stated that she did not pay the 1982 premium because the decedent had told her that she would only have to pay the premium for two years and, thereafter, the policy would have a cash value sufficient enough to pay for the next two years. On cross-examination, when questioned about who paid the 1982 premium, respondent responded, "[p]robably nobody else. I not know anything. I want to see document who pay." In her answer to the citation petition, respondent admitted that Sophie Rosa had paid the 1982 premium.

Respondent further testified that, prior to the time that her current attorney showed her the letters written by Rysztogi to O'Connell, she had not seen them. According to her, she never gave Rysztogi authority

---

[1]O'Connell testified that Northern National Life Insurance Company and Manhattan National Life Insurance Company were actually one and the same company.

to send the letters. She claimed that she never spoke with him concerning the 1982 premium.

Rysztogi was subpoenaed by petitioner to appear at the citation proceeding. According to the attorney for the estate, the subpoena was returned unserved. Rysztogi did not appear at the proceeding.

O'Connell testified on behalf of the estate. He stated that in April 1982, 11 months after respondent gave her deposition, he received two letters from Rysztogi. The April 2 letter contained the decedent's life insurance policy. The April 16 letter contained the premium due notice and stated that the premium had to be paid by April 28. In accordance with the terms stated in the letter, Sophie Rosa paid the premium and O'Connell began to take the necessary steps to effect a change of beneficiaries. In the interim, decedent died. O'Connell was unable to complete the change of beneficiaries because his client, Sophie Rosa, had no legal connection with the life insurance policy and the company would not send him the necessary forms. After three or four months of unsuccessful attempts to effect a change of beneficiaries, O'Connell contacted Rysztogi concerning the same.

After hearing the testimony, reviewing the evidence and hearing argument of counsel the trial court entered a judgment in favor of the estate. The court expressly stated that it found respondent's testimony was not totally truthful and that Rysztogi, by sending the letters to O'Connell, had acted upon respondent's authority. The court held that the equitable ownership of the life insurance policy and the right to the proceeds therefrom were transferred to decedent's estate by delivery of the policy and premium notice to the attorney for the estate on the condition that the premium would be paid. Respondent appeals, contending that (1) the trial court erred in finding that respondent's attorney had authority to enter into an agreement with the estate; (2) there was no consideration for the assignment of the insurance policy; and, (3) the citation action was not statutorily permissible. We affirm.

Respondent first contends that the trial court erred in finding that Rysztogi had authority to enter into the agreement to change beneficiaries on the insurance policy. She posits two arguments in support thereof. She first argues that the estate failed to meet its burden to prove that Rysztogi had authority to enter into an agreement.

The law of principal and agent is generally applicable to the relation of attorney and client. (*Feiertag v. Reichmann* (1959), 21 Ill. App. 2d 215, 220, 157 N.E.2d 818.) Consequently, the client is bound, according to the ordinary rules of agency, by acts of his attorney within the scope of the attorney's authority. (*Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 820, 458 N.E.2d 1120; *Bond v. Duntley Manufacturing Co.*

(1915), 195 Ill. App. 576 (abstract of opinion).) Respondent correctly argues that the burden to prove agency and the scope of authority is on the person seeking to charge the alleged principal. (*Palos Bank & Trust Co. v. Kardaras* (1982), 104 Ill. App. 3d 505, 511, 432 N.E.2d 1123.) We note that the applicable standard of proof of an agency relationship is by a preponderance of the evidence. *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 582, 485 N.E.2d 1281; *Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, 437 N.E.2d 860.

■■ There is a presumption, in law, that an attorney, as an officer of the court, has the authority to act for a client whom he professes to represent. (*In re Estate of Richmond* (1953), 1 Ill. App. 2d 310, 317, 117 N.E.2d 583; 7A C.J.S. *Attorney & Client* §171 (1980).) The presumption in favor of the authority of the attorney is not conclusive, however, and may be rebutted. (7A C.J.S. *Attorney & Client* §171 (1980).) Further the scope of an attorney's authority, as agent, may be shown by circumstances as well as by proof of express authority. *Mulhern v. Public Auto Parks, Inc.* (1938), 296 Ill. App. 238, 243, 16 N.E.2d 157.

Respondent maintains that the only evidence in this case concerning Rysztogi's authority was her uncontradicted testimony that she never authorized him to enter into the agreement. We disagree. Respondent seems to totally discount as evidence the two letters from Rysztogi to O'Connell, as well as the testimony of O'Connell. Both letters were properly admitted into evidence, without objection. Further, O'Connell unequivocally testified concerning his receipt and the content of the letters, and that Sophie paid the premium.

Respondent failed to explain the circumstances by which, 11 months after the claimed termination of the attorney-client relationship, Rysztogi had in his possession the policy and the 1982 premium notice. It seems incredible to this court that after terminating the relationship, Rysztogi would have these documents, particularly the premium notice, in his possession and would seek, of his own volition and without any apparent benefit to him, to effect a change of beneficiaries. Respondent's only evidence to rebut the presumption of his authority was her testimony, which the trial court found to be less than truthful.

■■ Based on the evidence presented, the court found that Rysztogi had authority to write the letters. We repeat the established rule that the trial court was in the best position to assess the credibility of the witnesses and to weigh the evidence. (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 23, 473 N.E.2d 588.) Here the trial court disbelieved respondent. We have no basis upon which to disturb its findings, and we therefore conclude that petitioner met its burden of proof.

■ Respondent next argues, relying on *Knisley v. City of Jacksonville* (1986), 147 Ill. App. 3d 116, 497 N.E.2d 883, and similar cases, that in order for an attorney to conclude a settlement or to compromise a claim, he must receive express consent or authorization from the principal. We take no issue with this well-established rule. However, the rule has no application in this case. At the time of this transaction neither a settlement nor the compromise of a claim was involved. Rather, it appears, based on the record, that this was simply a case where respondent chose to be relieved of the continuing obligation to pay the insurance premium and engaged the services of Rysztogi to achieve that end.

Respondent's second contention is that there was no consideration for the assignment of the insurance proceeds. The estate responds that there was sufficient consideration, *viz.*, respondent was relieved of the burden to pay the premium. Respondent counters that under the terms of the policy she was under no obligation to pay the premium; the policy would have remained in full force and effect through an automatic loan against the cash value for an additional two years before lapsing. Therefore, she argues, there would have been no reason for her to make the assignment.

A clause in the insurance policy concerning loans for premium payments provides in pertinent part:

"Automatic Premium Loans. Upon written request the Company will automatically pay and charge as a loan against this policy any premium not paid within the grace period unless the resulting indebtedness would exceed the loan value."

A copy of the application for insurance, completed by the decedent, indicates that the automatic premium loan option was elected.

■ Assignment of an insurance policy must be supported by sufficient consideration. (22 Ill. L. & Prac. *Insurance* §222 (1956); see also *Equitable Insurance Co. v. Cooper* (1871), 60 Ill. 509, 511; *Dr. Charles W. Smith III, Ltd. v. Connecticut General Life Insurance Co.* (1984), 122 Ill. App. 3d 725, 462 N.E.2d 604.) Here, even though decedent elected the automatic premium loan provision, it is clear from the provision, as recited above, that such payments were not self-initiating. Respondent was required under the policy to actually request the loan before the payment would be paid. She presented no evidence to show that she had invoked this provision. The mere fact that respondent could have availed herself of the automatic payment provision does not necessarily lead to the conclusion that she did not assign the proceeds of the policy. We hold that the release of respondent from any obligation to pay the premium was a sufficient consideration to support the assignment of the insurance to the estate.

Before leaving this issue we address one additional point raised by petitioner in its brief. Petitioner stated that it objected to the admission of respondent's testimony concerning her conversations with decedent. Petitioner maintains that the admission of this testimony was error because it violated the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201).

■■ ■ The object of a citation proceeding is to provide an expeditious process for the discovery of estate assets. (*In re Estate of Shanahan v. Bowen* (1978), 59 Ill. App. 3d 269, 273, 375 N.E.2d 508; *In re Estate of Vercillo* (1960), 27 Ill. App. 2d 151, 169 N.E.2d 364.) In such proceedings, all witnesses are witnesses of the court, and many rules of evidence are to be liberally applied. (*In re Estate of Shanahan*, 59 Ill. App. 3d at 273; *In re Estate of McVicker* (1963), 39 Ill. App. 2d 389, 188 N.E.2d 731.) Obviously, respondent here had an interest in the proceeding, and her testimony regarding the conversations she had with decedent was supportive of her position. Nevertheless, given the nature of the proceedings and the liberal application of restrictive evidentiary rules, we do not believe that the court abused its discretion in allowing respondent to testify to the conversations.

Respondent's third and final contention is that the citation proceeding on behalf of Sophie Rosa, instead of on behalf of the estate, was statutorily impermissible. She argues that if the letter agreement is enforced the guardian, and not the estate, would wrongfully benefit.

■ Respondent's argument is without merit. The petition for citation and discovery was filed on behalf of the estate, and the prayer for relief was that an order be entered ordering respondent to deliver to the estate the proceeds of the life insurance. Moreover, the trial court expressly stated that "the equitable ownership of the policy and the right to receive the proceeds of the life insurance, as beneficiary of the policy, was transferred to the estate of Frank Maslowski." Accordingly, the court imposed a constructive trust on the life insurance proceeds and entered judgment for the estate.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

CERDA, P.J., and WHITE, J., concur.